UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Carlos Vosburgh,
     Plaintiff

     v.                              Civil No. 07-cv-101-SM
                                          Opinion No. 2008 DNH 133
CO Shane Bourassa, individually;
James O'Mara, Jr., individually
and as Superintendent of the
Hillsborough County DOC,
     Defendants

**O R D E R**

Carlos Vosburgh, at all relevant times a pre-trial detainee at the Hillsborough County House of Corrections ("HCHC"), sues in three counts. He seeks damages for injuries he claims to have suffered when he was deliberately struck in the groin by HCHC correctional officer Shane Bourassa. Plaintiff asserts that Bourassa used excessive force, in violation of his rights under the Fourteenth Amendment (Count I), and committed common-law assault (Count II). He also claims that Superintendent James O'Mara is liable for Bourassa's assault under the theory of respondeat superior (Count III). Before the court are defendants' motion to preclude plaintiff's treating physician from testifying as an expert witness and defendants' motion for summary judgment. Plaintiff objects to both motions. For the

reasons given, defendants' motion to preclude is granted in part and their motion for summary judgment is denied.

## Background

Unless otherwise indicated, the following facts are undisputed.

On September 4, 2006, three correctional officers, including Bourassa, entered Vosburgh's cell to conduct a search.  When the officers entered his cell, Vosburgh moved to the back and stood facing the wall.  As part of the cell search, Bourassa subjected Vosburgh to a pat-down search.  According to Bourassa, the pat-down was routine, and there is no evidence that Vosburgh said or did anything to justify the use of any more force than was necessary to conduct the pat-down.  According to Vosburgh, after patting down the insides and outsides of his legs, from top bottom, Bourassa pulled his hand quickly upward, delivering a "reverse karate chop" to the groin.  (Pl.'s Obj. to Defs.' Mot. to Preclude (document no. 14), Ex. 2 (Vosburgh Dep.), at 63-65.)

On September 10, Vosburgh filed a health services request form in which he reported "a lump in [his] groin [he] received on 9/4/06."  The next day, he filed an inmate grievance form in

2

which he complained that on September 4, he "was struck intentionally and excessively in the groin area during a routine pat down search by Correctional Officer Bourassa."  An interdisciplinary progress note from the HCHC medical department dated September 12 reported: "IM claims [he] had 1 hand punch to the testicles when searched in cell."  Medically, the notes documented "L groin edema, L testicle swelling, tenderness, slight discoloration and [increased] warmth, L testicle edema." The summary judgment record includes twelve health services request forms in which Vosburgh complained of groin pain.[1]

Vosburgh saw a doctor on September 27 and October 25.  At the second visit, the doctor recommended ultrasound testing, which was performed on October 31 at the Elliot Hospital.  The ultrasound detected bilateral hydroceles and a small left-sided varicocele.  Vosburgh saw the doctor again on December 13, and was referred to a urologist.  Vosburgh saw Dr. John Munoz, a urologist, on January 2.  Dr. Munoz noted "[s]mall bilateral hydroceles" and a "[s]mall left varicocele."  On February 1, Dr. Munoz performed a left subinguinal varicocelectomy and a left hydrocelectomy.

---

[1] Those forms are dated September 10, 16, 20, and 22; October 6, 11, and 19; November 11, 16, 25, and 28; and December 8.

It is also undisputed that Vosburgh has been diagnosed with similar urological problems at least once before.  In May 2001, he was seen for a left testicular mass, and was diagnosed with a "[s]mall left hydrocele with small left varicocele."  According to Vosburgh, his 2001 testicle pain was centered on a different part of his left testicle than the pain he experienced in 2006. He also points out that there is no record of his having any groin or scrotal symptoms from 2001 until September 2006.

Dr. Munoz was deposed in January, 2008.  In response to a question from defendants' counsel, Dr. Munoz testified that from his treatment alone, he was unable to determine the cause of Vosburgh's hydrocele (Defs.' Mot. Summ. J., Ex. 1 (Munoz Dep.) at 41-42), and further testified that it would probably not be possible to identify trauma as the cause of a hydrocele months after its onset (id. at 41).  Subsequently, plaintiff's counsel had the following exchange with Dr. Munoz:

> Q.   At the end of the day, the information you have or don't have from Mr. Vosburgh prevents you from giving an opinion one way or the other.  I'm going to ask you to assume some facts.
>
> A.   Okay.
>
> Q.   And John will probably disagree with them and we'll fight about that on another day, but I would like to see if you can reach any conclusions based on the facts I'm going to give you.

The first fact is that there was a long period of being asymptomatic, from early in 2001 or 2002 when he last reported to the State Prison until the operative date of September 4th.  So assume he's many years without symptoms in this area.  Second, one week after he claims he was hit, the nurse did see groin edema, which I understand to be swelling . . .

A.   Yes.

Q.   . . . left testicle swelling and tenderness. Those observations were made on the 12th which was about eight days after it happened, and I would ask you to assume also that on the 27th of September, about three plus weeks after, a doctor observed slight tenderness of the left epididymal area and slight tenderness of the left groin, and then also assume the subjective complaints he made are true, that he was experiencing more or he was experiencing symptoms that he wasn't experiencing before.  If those facts are true, can you say more likely than not that trauma, if not causing the conditions, made them symptomatic?

A.   Yes, you could assume that.

(Id. at 63-64).


## Motion to Preclude

In document no. 13, defendants ask the court to preclude Dr. Munoz "from testifying about any opinions he may have about the details or circumstances surrounding the cause of the plaintiff's injury," or, in the alternative, to "[p]rovide the defense an additional thirty days for the disclosure of its own expert(s), and provide the defense equal latitude with regards to rejecting the disclosure requirements of [Rule] 26(a)(2)(B)."  Plaintiff

5

counters that a treating physician may provide opinion testimony
based upon his or her treatment and points out that defendants
have long been on notice that he intended to call Dr. Munoz to
testify that his testicular condition was caused by trauma.

In <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d 103, 113 (1st Cir.
2003), the court of appeals for this circuit cited, with
approval, <u>Ngo v. Standard Tools & Equipment Co.</u>, 197 F.R.D. 263
(D. Md. 2000).  In <u>Ngo</u>, the district court explained:

> That a treating physician should be considered
> principally a fact witness is not a novel idea.  In the
> often cited and well reasoned opinion of <u>Sullivan v.
> Glock, Inc.</u>, 175 F.R.D. 497 (D. Md. 1997), the Court
> reviewed the often confusing discovery obligations that
> a party encounters when trying to characterize the
> expected testimony of a treating physician.  Simply
> put, a treating physician is "a hybrid witness for whom
> no Rule 26(a)(2)(B) disclosures are required."  As
> such, a treating physician can be a fact witness for
> some purposes and a retained or consulting expert
> witness for other purposes.
>
> In order to determine which opinions are
> admissible as "fact opinions," the parties and the
> Court must examine the nature of the testimony expected
> to be offered at trial.  The "fact opinions" of a
> treating physician's testimony include not only his or
> her simplistic observations – such as a person's gait,
> the presence of swelling or that a body part is warm to
> the touch – but also notions regarding causation,
> diagnosis, prognosis, and the extent of the disability
> or injury.  Conversely, if the physician's opinion is
> based on information not learned during the course of
> treatment, then such testimony usually is beyond the
> "fact opinion" classification and must comply with the
> rules regarding expert disclosures.  The delineation of

> treating physicians as fact witnesses for these
> purposes has been similarly treated in other
> jurisdictions.  See Quarantillo v. Consolidated Rail
> Corp., 106 F.R.D. 435 (W.D.N.Y. 1985); Baker v. Taco
> Bell, Corp., 163 F.R.D. 348 (D. Col. 1995).

Id. at 266-67; see also Sprague v. Liberty Mut. Ins. Co., 177
F.R.D. 78, 81 (D.N.H. 1998) ("Plaintiff's expert witnesses are
treating physicians and a treating psychologist from whom reports
are not required, provided that all opinions they express are
formed on the basis of their treatment of plaintiff.") (emphasis
added).

Based upon the foregoing principles, Dr. Munoz may testify
about: (1) his diagnosis and treatment of plaintiff; (2) the
general nature of hydroceles and varicoceles; (3) the range of
possible causes of hydroceles and varicoceles; and (4) the range
of things that could cause an asymptomatic hydrocele or
varicocele to become symptomatic.  However, without satisfying
the reporting requirements of Rule 26(a)(2)(B), Dr. Munoz may not
offer an opinion regarding the cause of plaintiff's hydroceles
and varicocele.  His deposition testimony demonstrates that he
was unable to offer an opinion on causation based upon his
examination and treatment of plaintiff, but was able to do so
only in response to a hypothetical question from plaintiff's
counsel which included "information not learned during the course

of treatment." <u>Ngo</u>, 197 F.R.D. at 267.  Thus, testimony on the
causation of plaintiff's condition falls outside the boundaries
of strictly factual testimony, or "fact opinion," and, as a
consequence, cannot be offered without meeting the requirements
of Rule 26(a)(2)(B).  Accordingly, defendants' motion to preclude
is granted in part.


### Motion for Summary Judgment

<u>A. Summary Judgment Standard</u>

Summary judgment is appropriate when the record reveals "no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law." FED. R. CIV. P.
56(c).  "An issue is genuine if, on the evidence presented, it
'may reasonably be resolved in favor of either party.'" <u>Cordi-
Allen v. Conlon</u>, 494 F.3d 245, 249 (1st Cir. 2007) (quoting
<u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990)).
"[A] fact is material if it would affect the outcome of the
case." <u>Brown v. Latin Am. Music Co.</u>, 498 F.3d 18, 22 (1st Cir.
2007) (citing <u>Cochran v. Quest Software, Inc.</u>, 328 F.3d 1, 6 (1st
Cir. 2003)).  To defeat a motion for summary judgment, "the non-
moving party 'must set forth specific facts showing that a
genuine issue of material fact exists as to each issue upon which
[he] would bear the ultimate burden of proof at trial.'" <u>Torres-</u>

Negron v. Merck & Co., 488 F.3d 34, 39 (1st Cir. 2007) (quoting
Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53
(1st Cir. 2000)).  When ruling on a party's motion for summary
judgment, the court must view the facts in the light most
favorable to the nonmoving party and draw all reasonable
inferences in that party's favor.  See id. (citing Rodríguez v.
SmithKline Beecham, 224 F.3d 1, 5 (1st Cir. 2000)).

B. Discussion

      Defendants move for summary judgment, arguing that: (1)
plaintiff's claimed groin injury was either a preexisting
condition or de minimis as a matter of law; (2) plaintiff has no
expert medical testimony with which to prove causation; (3)
Bourassa is entitled to qualified immunity from plaintiff's
constitutional claim; (4) Bourassa's contact with plaintiff was
privileged and, thus, not a common-law assault; and (5) O'Mara
neither knew of nor approved Bourassa's alleged conduct, which
relieves him of respondeat superior liability.  Plaintiff
counters by identifying three genuine issues of material fact:
(1) whether Bourassa deliberately struck him in the groin; (2)
the severity of his injury and pain; and (3) whether the alleged
assault caused his symptoms to recur.  In their reply, defendants
contend, among other things, that plaintiff has not identified

9

any genuine issue of material fact because: (1) their summary
judgment motion is premised upon a presumption that Bourassa did
strike Vosburgh in the groin;[2] (2) the severity of plaintiff's
injury is not at issue because "there is no dispute that Vosburgh
was suffering a small left varicocele and a left hydrocele in his
testes"; and (3) plaintiff lacks the expert testimony necessary
to establish causation.


Count I

In Count I, plaintiff claims that Bourassa used excessive
force against him, in violation of the Fourteenth Amendment, by
striking him in the groin maliciously and sadistically, for the
purpose of inflicting pain.


"A pretrial detainee's claim that he has been subjected to
unconstitutional conditions of confinement implicates Fourteenth
Amendment liberty interests . . . [which] are coextensive with
those of the Eighth Amendment's prohibition against cruel and
unusual punishment."  Surprenant v. Rivas, 424 F.3d 5, 18 (1st
Cir. 2005) (citing Burrell v. Hampshire County, 307 F.3d 1, 7

---

[2] In their summary judgment motion, defendants argue that
they are entitled to judgment as a matter of law if either "the
contact was intentional and sadistic" or if "it was incidental,
but an overly aggressive form of pat-search."

(1st Cir. 2002)).  "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (citing <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992)).  More specifically, "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  <u>Hudson</u>, 503 U.S. at 5 (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)).

"In order to establish a constitutional violation, a plaintiff's claim must meet both objective and subjective criteria."  <u>Surprenant</u>, 424 F.3d at 18 (citing <u>Farmer</u>, 511 U.S. at 834)).  "[C]ourts considering a prisoner's claim must ask both if 'the officials acted with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  <u>Hudson</u>, 503 U.S. at 8 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'"  <u>Hudson</u>, 503 U.S. at 8 (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)).  While "not . . . every malevolent touch by

a prison guard gives rise to a federal cause of action," <u>Hudson</u>, 503 U.S. at 9 (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)), "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," <u>id.</u>

Regarding the subjective element, the Eighth Amendment prohibits "the unnecessary and wanton infliction of pain." <u>Hudson</u>, 503 U.S. at 5 (citation omitted).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u>: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Id.</u>

Given defendants' contention that Bourassa is entitled to summary judgment on Count I even if he struck Vosburgh's groin intentionally and sadistically, their argument appears to rest on a suggestion that the alleged force used was not harmful enough to rise to the level of a constitutional violation.  The Supreme Court has rejected a "'significant injury' requirement" in excessive force claims, <u>see id.</u> at 9-10, and this is not a case in which expert medical testimony is required to establish a

12

causal relationship between Bourassa's alleged chop to Vosburgh's groin and the pain Vosburgh experienced as a result.  A jury can well determine what happened and what damage resulted, if any.

Even without expert medical testimony about the cause of Vosburgh's hydroceles and varicocele, the undisputed factual record includes twelve health services request forms, all dated after the September 4 incident, in which Vosburgh complained about groin pain.  While perhaps less compelling than expert medical testimony, the substance and timing of those request forms support plaintiff's claim that Bourassa's action caused him significant pain.  "[T]he unnecessary and wanton infliction of pain," Hudson, 505 U.S. at 5, is prohibited, as cruel and unusual punishment, by the Eighth Amendment.  That is, whether or not Bourassa's action caused or exacerbated a hydrocele, plaintiff's HCHC medical records are sufficient, in support of his testimony, to demonstrate that plaintiff reported groin pain continuously for four months after his encounter with Bourassa and that those complaints were taken seriously by the HCHC physician, who ordered ultrasound testing in October and referred Vosburgh to an outside specialist in December.

Moreover, the persistence of plaintiff's complaints about pain distinguish this case from the cases defendants cite for the proposition that plaintiff's injury was <u>de minimis</u>.  <u>See</u> <u>Carpenter v. Sheriff</u>, No. 7:05cv00667, 2006 WL 2709691, at *4 (W.D. Va. Sept. 20, 2006) (ruling inmate groin injury to be <u>de</u> <u>minimis</u> when plaintiff waited twenty-four hours to seek medical treatment, exhibited no signs of pain thirty-six hours after the incident, and symptoms completely dissipated within three days); <u>Rhoten v. Werholtz</u>, 243 Fed. Appx. 364, 366 (10th Cir. 2007) (affirming dismissal of excessive force claim where record showed that prison "doctor found no evidence of injury to [plaintiff]'s genitalia and pubic area and [plaintiff]'s groin and scrotum exam was normal"); <u>Thornley v. Flemming</u>, No. Civ.A. 3:03CV419, 2004 WL 1348599, at *3 (E.D. Va. March 25, 2004) (ruling inmate groin injury to be <u>de minimis</u> when inmate, alleging chop to the groin, complained of pain only twice, on the day of the alleged assault and again one week later); <u>Mickle v. Ahmed</u>, 444 F. Supp. 2d 601, 620 (D.S.C. 2006) (ruling dog bite to be <u>de minimis</u> when plaintiff was treated in single visit to the emergency room and suffered no complications).

Turning to defendants' apparent contention that plaintiff needs expert medical testimony to establish causation, the cases

14

they rely upon for that proposition are not persuasive.  For
example, in <u>Moore v. Gwinnett County</u>, 967 F.2d 1495 (11th Cir.
1992), the plaintiff claimed a Fourth Amendment violation based
upon her delivering a stillborn child several days after she had
been arrested and allegedly subjected to excessive force.  967
F.2d 1495, 1496-97 (11th Cir. 1992).  The defendants moved for
summary judgment on grounds of qualified immunity.  <u>Id.</u> at 1496.
The trial court denied the motion, and the court of appeals
reversed, <u>id.</u>, noting:

> The record contains only one expert medical
> opinion assessing these events – that of Moore's
> obstetrician, Dr. Khalad Goheer.  Dr. Goheer rendered
> the following opinions: (1) that he saw at delivery no
> signs of maternal or fetal injury which would have
> caused the fetus's death; (2) there was no cause
> apparent to him for the fetus's death; and (3) some
> cause other than an injury to Moore caused the death.
> The record also contains the opinions of Moore and her
> husband to the effect that the child's appearance at
> birth led them to believe that he may have been injured.

<u>Id.</u> at 1497 (citations to the record omitted).  In <u>Moore</u>, the
lack of expert medical testimony was fatal to plaintiff's case
because the summary judgment record included a medical opinion
that directly contradicted plaintiffs' claim that force inflicted
on her by the arresting officer caused the stillbirth of her
child.  As the record in this case does not include a medical

opinion that Vosburgh's condition was not caused by Bourassa's alleged battery, <u>Moore</u> is not helpful.

Other precedents upon which defendants rely are less relevant and, as a consequence, less persuasive. <u>See</u> <u>Bellezza v. Fischer</u>, No. 05 Civ. 98(DLC), 2006 WL 3019760, at *4 n.2 (S.D.N.Y. Oct. 24, 2006) (requiring expert medical opinion that plaintiff's physical symptoms were caused by allegedly unsafe drinking water at Sing Sing Correctional Facility); <u>Eichler v. Sherbin</u>, No. Civ S-04-1108 GEB JFM P, 2006 WL 2781747, at *5 (E.D. Cal. Sept. 25, 2006) (ruling that plaintiff's lay opinion about medical treatment was insufficient to create triable issue when defendants had produced expert medical opinions that plaintiff had received adequate treatment); <u>Anthony v. Hill</u>, No. 2:06-cv-9, 2007 WL 2914253, at *6 (W.D. Mich. Sept. 28, 2007) (granting summary judgment to defendants where plaintiff claimed correctional officers used excessive force by stepping on his groin, but never sought medical treatment for alleged groin injury).

Finally, in a case from this circuit on which defendants rely, in which the plaintiff alleged that his employer harassed him to the point where he suffered "fatigue and depression which

in turn resulted in attacks of angina," <u>Moody v. Me. Cent. R.R.</u>

<u>Co.</u>, 823 F.2d 693, 693 (1st Cir. 1987), Judge Coffin wrote:

> We recognize the considerably relaxed standard of
> proof in FELA cases.  The test for minimally adequate
> proof of causation is "whether the proofs justify with
> reason the conclusion that employer negligence played
> any part, even the slightest, in producing the injury
> . . . ." <u>Rogers v. Missouri Pacific R.R. Co.</u>, 352 U.S.
> 500, 506 (1957).  But although a plaintiff need not
> make a showing that the employer's negligence was the
> <u>sole</u> cause, there must be a sufficient showing (i.e.,
> more than a possibility) that <u>a</u> causal relation
> existed.  The general principle has been stated by
> Prosser and Keeton:
>
> > Where the conclusion [of causation] is not one
> > within common knowledge, expert testimony may
> > provide a sufficient basis for it, but in the
> > absence of such testimony it may not be drawn.
>
> W.P. Keeton, <u>The Law of Torts</u> 269 (5th ed. 1984)
> (footnotes omitted).  Or, in the similar phrasing of
> Harper and James,
>
> > Expert evidence is often required to establish the
> > causal connection between the accident and some
> > item of physical or mental injury unless the
> > connection is a kind that would be obvious to
> > laymen, such as a broken leg from being struck by
> > an automobile.
>
> 4 F. Harper, F. James, O. Gray, <u>The Law of Torts</u> § 20.2
> (2d ed. 1986) (footnote omitted).  <u>See also</u> <u>Bushman v.</u>
> <u>Halm</u>, 798 F.2d 651, 658–59 (3d Cir. 1986).

<u>Id.</u> at 695–96 (parallel citations omitted).  While the connection

in <u>Moody</u>, between the treatment the plaintiff received from his

employer and the angina he developed, required expert testimony,

the situation in this case, four months of documented groin pain

17

following a blow to the groin, has much more in common with a broken leg caused by a collision with an automobile.

In sum, because defendants concede, for purposes of summary judgment, that Bourassa struck Vosburgh in the groin, and the undisputed factual record documents that plaintiff complained of groin pain for four months after the September 4 incident, defendants are not entitled to summary judgment that plaintiff's injury is constitutionally <u>de minimis</u>, and plaintiff's lack of an expert medical opinion on causation is not fatal to his claim.

Defendants also argue that Bourassa is entitled to summary judgment based on the doctrine of qualified immunity.  Plaintiff disagrees.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  The analytical framework for assessing a claim of qualified immunity involves three separate inquiries:

> (i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.

DeMayo v. Nugent, 517 F.3d 11, 17 (1st Cir. 2008) (quoting Burke v. Town of Walpole, 405 F.3d 66, 77 (1st Cir. 2005)).

Here, summary judgment based upon qualified immunity is not appropriate because, whether Bourassa deliberately struck plaintiff in the groin, without a legitimate penalogical purpose, and to cause plaintiff pain, are, on this record, genuine issues of material fact.  Cf. Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002) (holding that grant of judgment as a matter of law based upon qualified immunity was improper when facts were in dispute); Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001) (holding that "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness").  If Bourassa acted in the manner claimed, he obviously is not entitled to qualified immunity.

Moreover, it seems unlikely that qualified immunity could ever be a defense to an Eighth-Amendment violation based upon the use of excessive force.  In Johnson v. Breeden, the Eleventh Circuit explained:

> In order to have a valid claim on the merits of excessive force in violation of that constitutional provision [i.e., the Eighth Amendment Cruel and Unusual Punishment Clause], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm.  Equally important, it is clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause. So, where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley.

Johnson v. Breeden, 280 F.3d 1308, 1321-22 (11th Cir. 2002).  The reasoning of Johnson is persuasive, and has been adopted by at least one district court outside the Eleventh Circuit.  In Thomas v. Ferguson, the court explained:

> More importantly, where malicious and sadistic use of force is the issue of the constitutional cause of action, the qualified immunity test collapses into the same test as that of the constitutional issue, and is thus superfluous.  Malicious and sadistic use of force is always in violation of clearly established law, so qualified immunity affords no protections to defendants

20

in Eighth Amendment excessive force cases.  <u>Skrtich v.
Thornton</u>, 280 F.3d 1295, 1301 (11th Cir. 2002) (holding
"a defense of qualified immunity is not available in
cases alleging excessive force in violation of the
Eighth Amendment, because the use of force maliciously
and sadistically to cause harm is clearly established
to be a violation of the Constitution"); <u>Johnson v.
Breeden</u>, 280 F.3d 1308, 1321 (11th Cir. 2002) . . . .

361 F. Supp. 2d 435, 442 (D.N.J. 2004).  The reasoning of

<u>Skrtich</u>, <u>Johnson</u>, and <u>Thomas</u>, is persuasive; it is difficult to

see any role for qualified immunity in this case — either no

constitutional violation occurred, or, if it did, qualified

immunity would afford no relief to defendant because it has long

been clearly established law that correctional officers may not

wantonly apply force for no reason but to inflict pain or harm

upon an inmate.

<u>Count II</u>

In Count II, plaintiff claims that "[b]y striking [him] in

the groin as alleged above, defendant Bourassa committed the

common law tort of assault, or unprivileged physical contact."

(Compl. ¶ 19.)  Bourassa counters by recharacterizing Count II as

a battery claim, and arguing that his contact with plaintiff was

privileged and that plaintiff has failed to produce any evidence,

other than his own subjective opinion, that Bourassa struck him

intentionally.

Regarding privilege, there can be no doubt that Bourassa was privileged to touch plaintiff in the course of subjecting him to a routine pat-down search.  It is equally certain, however, that once the pat-down was completed, Bourassa was not privileged to strike plaintiff for the purpose of causing him harm or pain.

Turning to plaintiff's evidence of Bourassa's intent, defendants argue that plaintiff "concedes the lack of animosity with Bourassa (before or after September 4th), his failure to see the contact alleged, the customary hands-on nature of a pat-search, and the lack of any verbal commentary that would objectively reflect the officer's intentions."  (Def.'s Mem. of Law (document no. 11-2), at 27.)  On the other hand, plaintiff testified during his deposition, that Bourassa struck him in the groin only after patting down both of his legs, inside and out, from top to bottom, which testimony supports a reasonable inference that Bourassa completed a full pat-down search and then, gratuitously, struck Bourassa in the groin without cause and to inflict pain.  That is enough to create a triable issue concerning the nature of Bourassa's conduct and the intent behind it.  Because the issue of privilege and the question of Bourassa's intent both depend upon resolution of disputed issues

of material fact, Bourassa is not entitled to summary judgment on
Count II.

Count III

In Count III, plaintiff claims that "defendant O'Mara is
. . . responsible for the common law misconduct of defendant
Bourassa as alleged in Count II under respondeat superior."
(Compl. ¶ 24.)  O'Mara argues that, as a general matter,
employers are not liable for assault and battery committed by
their employees, and further argues, in reliance upon Daigle v.
City of Portsmouth, 129 N.H. 561 (1987), that he is entitled to
summary judgment on Count III because plaintiff has no evidence
that he, O'Mara, knew about or acquiesced in Bourassa's conduct,
and no evidence that Bourassa had ever been found to have used
unlawful force on any inmate in the past.  O'Mara's argument is
unavailing.

"Under respondeat superior, 'an employer may be held
vicariously responsible for the tortious acts of its employee if
the employee was acting within the scope of his or her employment
when his or her tortious act injured the plaintiff.'"  Porter v.
City of Manchester, 155 N.H. 149, 152 (2007) (quoting Porter v.
City of Manchester, 151 N.H. 30, 39-40 (2004)); see also Daigle,

23

129 N.H. at 579.  "[C]onduct falls within the scope of . . .
employment if: (1) it is of the kind [the employee] is employed
to perform; (2) it occurs substantially within the authorized
time and space limits; and (3) it is actuated, at least in part,
by a purpose to serve the employer."  Porter, 155 N.H. at 152.

O'Mara argues that, absent evidence that he knew about or
acquiesced in the conduct at issue, and evidence that Bourassa
had previously engaged in such conduct, "plaintiff is unable to
prove, as a matter of law, that [he] had the requisite amount of
knowledge, foreseeability and control to succeed on a respondeat
superior theory."  While O'Mara's argument is somewhat unclear –
as is the analytical import of "knowledge, foreseeability and
control"[3] – he appears to be contending that plaintiff's lack of
evidence precludes him from establishing the third element of the
"scope of employment" test.  An employer may be held liable for
assaults committed by an employee under respondeat superior.  In
Daigle the New Hampshire Supreme Court affirmed "a jury verdict
against the City of Portsmouth under the rule of respondeat
superior, predicated on findings that Portsmouth police officer

---

[3] "Control" is one element of the ten-part test for
determining whether an employee-employer relationship exists, see
Porter, 155 N.H. at 153-54, but the existence of an employee-
employer relationship does not appear to be in dispute.

Albert Pace committed [an] assault on Daigle while acting within the scope of his employment."  129 N.H. at 566.

Because the undisputed factual record does not require a conclusion, as a matter of law, that Bourassa was acting beyond the scope of his employment when he allegedly beat plaintiff, O'Mara is not entitled to summary judgment on Count III.

### Conclusion

For the reasons given defendants' motion to preclude (document no. 13) is granted in part and their motion for summary judgment (document no. 11) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 5, 2008

cc:  Michael J. Sheehan, Esq.
     John A. Curran, Esq.
     Elizabeth L. Burley, Esq.